UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JOVAN A. TORBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 24-3167 |
| | ) | |
| JACK CAMPBELL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MERIT REVIEW ORDER

Plaintiff Jovan Torbert, proceeding *pro se* and incarcerated at Dixon Correctional Center, pursues an action under 42 U.S.C. § 1983 for alleged constitutional violations while he was detained at the Sangamon County Jail ("Jail"). This case is before the Court for a merit review of Plaintiff's Second Amended Complaint pursuant to 28 U.S.C. § 1915A. (Doc. 19). The Court must "screen" the Second Amended Complaint and dismiss any legally insufficient claim or the entire action if warranted. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Second Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## ALLEGATIONS

Plaintiff files suit against the Sangamon County Jail, Superintendent Larry Beck, Nurse Jennifer, Licensed Practical Nurse (LPN) Isabella Fisher, and Correctional Officers John Nielson

and Matthew Dibbler. Plaintiff does not name Sheriff Jack Campbell, Assistant Superintendent Bill Smith, and John Does as Defendants. Therefore, they are dismissed without prejudice.

On February 15, 2022, Plaintiff slipped and fell in the shower at the Jail, injuring his lower back and tail bone. Plaintiff sought medical attention and requested assistive devices, including a wheelchair, walker, and cane, because it was extremely painful to walk. Plaintiff alleges his requests were ignored and he was forced to walk and stand until April 20, 2022. In May 2022, the doctor issued an order for Plaintiff to undergo an MRI and CT scan on June 17, 2022.

On an unspecified date, LPN Sarah informed Defendant Superintendent Beck that the Jail needed to provide Plaintiff with a Hoyer lift to safely transfer him on and off the bed and toilet. Defendant Beck allegedly ignored her request.

Instead of using a Hoyer lift to transfer Plaintiff, who was overweight and immobile, correctional staff allegedly used a gait belt to move him into a wheelchair on June 17, 2022. During the process, Plaintiff fell to the floor and became trapped under the wheelchair, further aggravating his prior injuries. Plaintiff underwent an MRI and CT scan as scheduled on June 17, 2022. It is unclear if the fall occurred before or after the MRI and CT scan.

On June 18, 2022, Plaintiff informed Defendant LPN Fisher that he was in excruciating pain from his fall on June 17, 2022. Defendant Fisher asked Defendants Correctional Officers Dibbler and Nielson to help transfer Plaintiff from his wheelchair into the bed. Defendant Fisher put a gait belt around Plaintiff's waist. Plaintiff explained to Defendants Dibbler and Nielson that he had been dropped the day before using the same procedure. Plaintiff alleges that Defendants Dibbler and Nielson attempted to transfer him from the wheelchair into the bed and dropped him on his tailbone. Plaintiff alleges he "heard a pop," and pain went up his spine. (Doc. 19 at p. 6). Then, Defendants Dibbler and Nielson allegedly grabbed his legs and threw him onto the bed.

Plaintiff laid in the bed in agonizing pain, could no longer feel his feet, and screamed for help. Plaintiff was rushed to Springfield Memorial Hospital in Springfield, Illinois, where he underwent emergency surgery. The hospital doctor ordered Plaintiff to undergo intense inpatient rehab and ordered him to continue physical therapy visits after he returned to the Jail. The doctor also recommended that Plaintiff receive a motorized medical bed with rails, portal commode, Hoyer lift, and a wheelchair.

Plaintiff was discharged from the hospital on September 6, 2022. Plaintiff alleges Defendant Nurse Jennifer failed to follow the hospital doctor's recommendations for continued physical/occupational therapy. During an appointment with Dr. Goel on October 19, 2022, Dr. Goel recommended physical/occupational therapy due to the high risk for blood clots. On December 2, 2022, Dr. Amin informed Plaintiff that images of his back showed there had been no signs of progress from June 22, 2022, through December 1, 2022. On December 21, 2022, Dr. Duran told Plaintiff she had submitted several referrals for Plaintiff to receive physical/occupational therapy. Plaintiff claims he inquired with Defendant Jennifer about his physical/occupational therapy, but she would not respond to his inquires. Plaintiff alleges Defendant Jennifer informed him "the reason she wasn't sending plaintiff on his appointments is that security staff would kill her if she scheduled plaintiff more than one day a week." *Id.* at p. 8. Plaintiff claims he did not receive physical therapy until he was transferred to Stateville Correctional Center.

Plaintiff alleges that Defendants Sangamon County Jail and Beck violated the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") by denying him a Hoyer lift and an ADA-compliant toilet with grab bars and/or handrails. As a result, Plaintiff alleges he suffered back injuries, numbness in his feet, deteriorating physical mobility, and mental health issues. *Id.* at pp. 9-11.

Plaintiff also claims that Defendant Beck failed to train Defendants Dibbler and Nielson how to properly transfer him from the wheelchair to his bed. As a result, Plaintiff allegedly suffered significant injuries and permanent disabilities

## ANALYSIS

### I.    Deliberate Indifference

Jail and prison officials must take reasonable measures to guarantee the safety of detainees. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). As Plaintiff was a pretrial detainee during the events at issue, his claims are reviewed under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015). Under the Fourteenth Amendment, Defendants' conduct is assessed using the objective reasonableness standard. *Jump v. Vill. of Shorewood*, 42 F.4th 782, 793 (7th Cir. 2022) (citing *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020); *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2019).

To prove Defendants failed to provide reasonable medical care, Plaintiff must show Defendants acted purposefully, knowingly, or recklessly. *McCann v. Ogle Cnty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018) (quoting *Miranda*, 900 F.3d at 353). If Defendants were "aware that their actions would be harmful, then they acted purposefully or knowingly; if they were not necessarily aware but nevertheless strongly suspected that their actions would lead to harmful results, then they acted recklessly." *Pittman by & through Hamilton v. Cnty. of Madison, Illinois*, 970 F.3d 823, 828 (7th Cir. 2020). Plaintiff must also show that the challenged conduct was objectively unreasonable. *McCann*, 909 F.3d at 886 (quoting *Miranda*, 900 F.3d at 354).

A court evaluating the reasonableness of medical care considers all the facts and circumstances faced by the individual alleged to have provided inadequate care and, without considering the subjective beliefs held by that individual, whether the response was reasonable. *Id.*; *Jump*, 42 F.4th at 793. In assessing the reasonableness of a response, relevant factors include (1) notice of the medical need; (2) the seriousness of the medical need; (3) the scope of the requested treatment (balanced against the seriousness of the need); and (4) police interests, including administrative, penological, and investigatory concerns. *Florek v. Vill. of Mundelein, Ill.*, 649 F.3d 594, 600 (7th Cir. 2011) (quoting *Williams v. Rodriguez*, 509 F.3d 392, 403-04 (7th Cir. 2007) (discussing the factors in a case involving medical care claims arising under either the Fourth or Fourteenth Amendments)); *Pulera*, 966 F.3d at 552 (citing *Williams*, 509 F.3d at 403).

Plaintiff alleges Defendant Superintendent Beck knew he needed a Hoyer lift to safely transfer to and from his bed and wheelchair after he sustained injuries during a fall in the shower on February 15, 2022. Plaintiff alleges LPN Sarah informed Defendant Beck that he needed a Hoyer lift, but Defendant Beck ignored her request. As a result, Plaintiff claims he was dropped during transfers on June 17 and 18, 2022, and severely injured.

Regarding Defendants LPN Fisher and Correctional Officers Dibbler and Nielson, Plaintiff alleges that they attempted to transfer him from his wheelchair into the bed on June 18, 2022, with a gait belt, even though Plaintiff informed them he had just been dropped using this same procedure the day before. While attempting to transfer Plaintiff, Defendants Dibbler and Nielson allegedly dropped him on his tailbone, grabbed his legs, and threw him onto the bed. Plaintiff alleges he was severely injured, underwent emergency surgery, and is permanently disabled.

Regarding Defendant Nurse Jennifer, Plaintiff alleges that she intentionally delayed and/or denied the recommended physical and occupational therapy after Plaintiff was released from the

hospital, causing him to suffer unnecessary injuries. Based on these allegations, the Court finds that Plaintiff has stated plausible Fourteenth Amendment deliberate indifference claims against Defendants Beck, Fisher, Dibbler, Nielson, and Jennifer.

## II. Failure to Train

Plaintiff also claims that Defendant Beck failed to properly train his staff to safely transfer him to and from his bed and wheelchair, which caused Defendants Dibbler, Nielson, and other staff members to drop him. In a failure to train claim, liability is not based on *respondeat superior*, but rather the supervisor's own actions or inactions. *Stewart v. Eiler*, No. CIV. 08-1033, 2008 WL 548637, at *2 (C.D. Ill. Feb. 26, 2008). One cannot base such a claim on an isolated incident, however, as "[a] claim concerning an isolated incident is generally insufficient to sustain a claim for failure to train because those officials who are responsible for creating a policy must be on notice of the constitutional deficiencies." *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1177 (N.D. Fla. 2002). As Plaintiff pleads only the incident regarding himself, he fails to plead that Defendant Beck should have been on notice and have rectified deficiencies in staff training. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2006) ( "There is no clear consensus as to how frequently [certain conduct] must occur to impose *Monell* liability, except that it must be more than one instance, or even three.") (internal citations omitted)). The failure to train claim against Defendant Beck is dismissed without prejudice.

## III. Americans with Disabilities Act and Rehabilitation Act

Plaintiff also asserts that Defendants Beck and the Sangamon County Jail violated the ADA and RA by denying him a Hoyer lift and an ADA-compliant toilet with grab bars and handrails. Plaintiff's ADA claim is reviewed under Title II of the ADA, which applies to detainees in county jails. *See Lacy v. Cook Cnty. Ill.*, 897 F.3d 847, 852 (7th Cir. 2018). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from

participation or denied the benefits of the services, programs or activities of a public entity." 42 U.S.C. § 12132; *Tenessee v. Lane*, 541 U.S. 509 (2004); *Lacy*, 897 F.3d at 852.

Plaintiff also attempts to plead a claim under the RA, which "prohibits a 'qualified individual with a disability' from being 'excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance' as a result of his disability." *Westmoreland v. Dart*, No. 21 C 4330, 2023 WL 4273661, at *7 (N.D. Ill. June 29, 2023) (quoting 29 U.S.C. § 794(a)). An RA claim is functionally identical to an ADA claim, *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), and the remedial scheme of the RA is incorporated into the ADA. § 12133.

Defendants Sangamon County Jail and Beck are not proper defendants. The Sangamon County Jail is not a "person" amenable to suit under § 1983. *Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001); *Nava v. Sangamon Cnty. Jail*, No. 14-3090, 2014 WL 1320259, at *2 (C.D. Ill. Apr. 2, 2014) ("[t]he 'Sangamon County Jail' is not a 'person' that may be sued under § 1983."). Thus, Defendant Sangamon County Jail is DISMISSED WITH PREJUDICE. Regarding Defendant Beck, there is no personal liability under Title II of the ADA or the RA. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court was . . . correct to dismiss [the individual defendants sued] in their individual capacity for the discrimination and retaliation claims arising directly under the Rehabilitation Act and the ADA."); *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) ("[E]mployees of the Department of Corrections are not amenable to suit under the Rehabilitation Act or the ADA." (citing 29 U.S.C. § 794(b); 42 U.S.C. § 12131)). Where a plaintiff names a state agency as a defendant, a district court may correctly dismiss individual defendants sued in their official capacity. *Stanek v. St. Charles Cmty. Unit Sch. Dist. #303*, 783 F.3d 634, 644 (7th Cir. 2015). Therefore, Plaintiff's ADA and RA claims are dismissed without prejudice. Plaintiff will be given leave to amend within 30 days of this

Order. Plaintiff's Third Amended Complaint will replace his Second Amended Complaint in its entirety and must contain all allegations against all Defendants. Piecemeal amendments are not accepted.

**IT IS THEREFORE ORDERED:**

**1) According to the Court's Merit Review of Plaintiff's Second Amended Complaint under 28 U.S.C. § 1915A, this case shall proceed on a Fourteenth Amendment deliberate indifference claim against Defendants Larry Beck, John Nielsen, Matthew Dibbler, Isabella Fisher, and Jennifer. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.**

**2) The Clerk is directed to ADD Isabella Fisher as a Defendant.**

**3) Defendant Sangamon County Jail is DISMISSED WITH PREJUDICE, and Defendants Jack Campbell, Bill Smith, and John Does are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is directed to TERMINATE Defendants Campbell, Smith, and John Does from the docket.**

**4) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.**

**5) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

**6) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.**

7) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

9) Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

10) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

11) Plaintiff shall be provided a copy of all pertinent medical records upon request.

12) Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

13) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

Entered this 3rd day of June, 2025.

                                *s/Sara Darrow*
                                SARA DARROW
                         CHIEF U.S. DISTRICT JUDGE